## IN RE GRAND JURY INVESTIGATION NO. 2184–86.

Superior Court of New Jersey
Law Division Bergen County

Decided March 5, 1987.

*Dennis J. Kwasnik and Ike R. Gavzy* for State (*Larry J. McClure,* Bergen County Pros. attorney).

*Richard J. Baldi* for petitioner (*William J. DeMarco,* attorney).

CIOLINO, A.J.S.C.

The question presented in this motion to quash a Grand Jury subpoena for fingerprints, palm prints and handwriting exemplars is whether a witness, here a potential target, may refuse to comply with that subpoena arguing that it contravenes the Fourth and Fifth Amendments to the U.S. Constitution.

On January 26, 1987, petitioner was served with a subpoena issued from one of the Grand Juries sitting in Bergen County requesting that he appear on January 29, 1987 to provide fingerprint, palm print and handwriting exemplars. At oral argument the assistant prosecutor stated that an investigation had begun into an illegal gambling operation and the Grand Jury was investigating that alleged illegal activity. It was further revealed that on December 22, 1986, pursuant to a search warrant, the Prosecutor's Office searched petitioner's home and seized cash and other papers. The Prosecutor's Office did observe, by way of surveillance, petitioner enter into what was found to be an illegal gambling establishment. This establishment was searched and certain gambling paraphernalia was seized. The Grand Jury sought through the use of the subpoena to match petitioner's physical characteristics with those obtained from the lawfully seized paraphernalia.

Petitioner did submit to fingerprints and palm prints pursuant to an Order of the Court issued on January 28, 1987. However, he now argues that the taking of handwriting exemplars violates his rights under the Fourth and Fifth Amendments to the U.S. Constitution.

The Prosecutor's investigation has, pursuant to search warrant, uncovered 60 names and 100 numbers including plus or minus signs which they allege to be of evidential value. The State requests that petitioner be compelled to present 15 repetitions of these 60 names and 15 repetitions of 100 numbers with the plus or minus signs in order to ensure a worthwhile analysis. They further indicate that the period of time involved in providing the exemplars will not exceed five hours.

Petitioner seeks to quash the Grand Jury subpoena for failure to satisfy the Fourth Amendment's reasonableness requirement and for violation of the Fifth Amendment's privilege against self-incrimination. As a preface to any consideration, it has historically been held that the Grand Jury has broad investigative authority. "Our Supreme Court is in accord with the general concept that a Grand Jury is to be permitted wide latitude in conducting its investigation." *In re Grand Jury Subpoena Duces Tecum*, 143 *N.J. Super.* 526, 535 (Law Div. 1976). *See also, U.S. v. Dionisio*, 410 *U.S.* 1, 93 *S.Ct.* 764, 35 *L.Ed.*2d 67 (1973); *Branzburg v. Hayes*, 408 *U.S.* 665, 92 *S.Ct.* 2646, 33 *L.Ed.*2d 626 (1972); *In re Grand Jury Impanelled March 1, 1971*, 348 *F.Supp.* 1001 (N.D.Ohio 1972).

Counsel for petitioner cites *In re Riccardi*, 337 *F.Supp.* 253 (D.N.J.1972), as authority for his argument that the subpoena seeking the handwriting exemplar falls within the protection afforded the witness under the Fourth Amendment prohibiting unreasonable searches and seizures. In *Riccardi* the Court held that "the Fourth Amendment must be consulted where the government applies for an Order to compel the taking of handwriting exemplars." *Id.* at 255. The Court also focused on the inquiry of whether the circumstances surrounding the

request for exemplars are reasonable and clearly indicated that the Fourth Amendment "proscribes only those searches and seizures which are unreasonable." *Id.* The decision turned upon the standard to be applied under the facts of that particular case. The Court stated, "In applying the standard of reasonableness, a precise formula cannot be fixed. This Court must examine the totality of circumstances in reaching its decision." *Id.*, citing *Chimel v. California*, 395 *U.S.* 752, 89 *S.Ct.* 2034, 23 *L.Ed.*2d 685 (1969). The request for exemplars was supressed after the Court noted that the government had been offered photostatic copies of Riccardi's signatures, which the Court felt would be more accurate specimens, having been spontaneously made and without any motive to disguise. It was held that the invasion of one's privacy should not be ordered where the very information sought can be easily acquired by other means.

The facts of the present application and subpoena are clearly distinguishable from those set forth in *Riccardi.* In *Riccardi,* the Court noted that the standard is one of reasonableness and that this standard is rather inexact but requires an examination of the totality of the circumstances. Citing *Mara v. U.S.*, 454 *F.*2d 580 (7 Cir.1971), it stated that reasonableness in the particular factual setting requires (1) the government show a proper purpose and authorization, (2) that the information sought is relevant, and (3) that the request for the exemplars is adequate and not excessive.

The reasonable standard as applied to the instant set of facts, i.e., that there is an ongoing Grand Jury investigation; that there was a surveillance of the petitioner; that petitioner was seen going to/or from an establishment where gambling paraphernalia was found; and, that the handwriting and fingerprinting exemplars would aid the Grand Jury in its investigation satisfies the first two prongs of the above test. The third prong, or the one dealing with the scope of the subpoena, poses another question. The Prosecutor's surveillance of the witness entering an alleged gambling establishment, which was subse-

quently searched pursuant to warrant and found to contain gambling paraphernalia, indicates that the Grand Jury investigation is something more than a general fishing expedition. The request by the Prosecutor for the exemplars must be adequate and not excessive. The State here requests the witness be compelled to present 15 repetitions of 60 names and 15 repetitions of 100 numbers with plus or minus signs to ensure a worthwhile analysis. This would total some 2400 exemplars. The Court must balance the need to intrude on an individual's privacy against the invasion entailed in determining reasonableness.

In support of the Prosecutor's argument concerning the number of exemplars to be taken, the Court was provided with an affidavit of a special agent of the Federal Bureau of Investigation who is certified by the American Board of Forensic Document Examiners. It stated that one of the procedures to be followed would be to "obtain samples from dictation until it is believed normal writing has been produced (the number of samples necessary cannot be determined in advance)." While I am satisfied that the exemplars which have been requested do not violate the petitioner's Fourth Amendment rights and protections, I am equally satisfied that a request for 2400 exemplars is unreasonable.

The present status of the law renders petitioner's Fifth Amendment arguments inapplicable. The privilege against self-incrimination reaches only communicative or testimonial statements. The courts of New Jersey have held that various types of nontestimonial evidence may be procured from a subject without infringing upon the subject's constitutional rights. *See State v. Green,* 209 *N.J.Super.* 347 (App.Div.1986); *State v. Dyal,* 97 *N.J.* 229 (1984) (drunken driver arrested by police without probable cause to believe he is intoxicated has no constitutional right to prevent involuntary taking of blood sample); *State v. Hall,* 93 *N.J.* 552, 563–564 (1963), *cert. den.,* 464 *U.S.* 1008, 104 *S.Ct.* 526, 78 *L.Ed.*2d 709 (1983) (lineup which

involves only display of evidence which is otherwise publically visible is not constitutionally infirm); *State v. Andretta*, 61 *N.J.* 544, 551 (1972) (defendant may be compelled to speak for voice print test); *State v. Carr*, 124 *N.J.Super.* 114 (1973) (handwriting exemplars); *State v. Burke*, 172 *N.J.Super.* 555, 557–558 (App.Div.1980) (compelling defendant to give blood, hair and saliva samples does not violate rights against self-incrimination); *State v. Papitsas*, 80 *N.J.Super.* 420, 426 (App.Div.1963) (removal of accused's shoes to obtain evidence to link him to crime is not violative of Fifth Amendment). The privilege does not bar a compulsion that makes a suspect or accused the source of real or physical evidence. *See Gilbert v. California*, 388 *U.S.* 263, 87 *S.Ct.* 1951, 18 *L.Ed.*2d 1178 (1967); *Schmerber v. California*, 384 *U.S.* 757, 86 *S.Ct.* 1826, 16 *L.Ed.*2d 908 (1966).

■ It is the determination of this Court that the Grand Jury subpoena seeking the handwriting exemplars of a witness who is a potential target of the Grand Jury investigation is not violative of the petitioner's Fourth Amendment rights and protections or his Fifth Amendment privilege against self-incrimination. For all of the foregoing reasons, it is ordered that the witness's motion to quash a subpoena for handwriting exemplars is denied; that the witness shall provide the hand-printed/handwritten exemplars of every sixth name on a list seized pursuant to the search warrant (10 names, five times each); that the witness shall provide handprinted/handwritten exemplars of every tenth number on a list seized pursuant to search warrant to include plus or minus signs (10 numbers, five times each); that the names to be used shall be spelled for the witness.[1]

---

[1]The Order of the Court was stayed from the date of argument, February 6, 1987, to 4:00 P.M., February 11, 1987, to permit petitioner to file for interlocutory appeal.

Interlocutory appeal was sought and was denied. Stay was lifted.