In re **SEPTEMBER 1971 GRAND JURY.**

**Richard J. MARA, a/k/a Richard J. Marasovich, Witness-Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 71–1740.**

United States Court of Appeals, Seventh Circuit.

Dec. 1, 1971.

Angelo Ruggiero, Chicago, Ill., for appellant.

William J. Bauer, U. S. Atty., Matthias A. Lydon, Asst. U. S. Atty., Chicago, Ill., for appellee; John Peter Lulinski, Jeffrey N. Cole, Asst. U. S. Attys., of counsel.

Before FAIRCHILD, CUMMINGS, and KERNER, Circuit Judges.

CUMMINGS, Circuit Judge.

Pursuant to a grand jury subpoena, petitioner appeared before the September 1971 Grand Jury in the Northern District of Illinois on September 23 and 28, 1971. The Grand Jury was investigating possible violations of the conspiracy provision of the Criminal Code (18 U.S.C. § 371) and of the provision proscribing thefts of interstate shipments (18 U.S.C. § 659). The Government advised petitioner that he was a potential defendant in that investigation. On both occasions, he was directed by the foreman of the Grand Jury to furnish handwriting and printing exemplars to its designated agent, but he refused to do so on constitutional grounds. After considering the Government's petition for a court order directing Mara to furnish such exemplars of his handwriting and printing as the Grand Jury deemed necessary, and after considering *in camera* an affidavit of FBI Special Agent William L. Buchanan, the district court ordered Mara to furnish the exemplars to the Grand Jury, obviously agreeing with the United States Attorney that this was "essential and necessary" to the Grand Jury's investigation in order to determine whether petitioner was "the author of certain writings." Later that day Mara refused to obey the court's order and was therefore adjudged in contempt and committed to the custody of the United States Marshal for the Northern District of Illinois "until such time as said respondent shall obey said order."

On appeal, petitioner's principal argument is that the order directing him to furnish the exemplars constituted an unreasonable search and seizure within the meaning of the Fourth Amendment.[1] Under our opinion in In re Dionisio, 442 F.2d 276 (7th Cir. 1971) (*per curiam*),[2] it is plain that compelling petitioner to furnish exemplars of his handwriting and printing is forbidden by the Fourth Amendment unless the Government has complied with its reasonableness requirement,[3] and that the present proceeding is not a premature challenge. Specifically, this appeal raises two issues necessarily generated by *Dionisio*. The first concerns the procedure the Government must follow in attempting to demonstrate that the proposed seizure of the exemplars is reasonable. The second focuses on the content of the reasonableness showing necessary to obtain the order sought below.

To show reasonableness, the Government submitted the aforementioned affidavit of Agent Buchanan *in camera* to the district court. The affidavit was then impounded without being shown to petitioner or his counsel. Petitioner challenges the adequacy of this secretive, *ex parte* procedure as nullifying his Fourth Amendment rights and deficient under the due process clause of the Fifth Amendment.

In our view, to justify the reasonableness of a request to furnish handwriting and printing exemplars to the Grand Jury, the Government must show reasonableness by presenting its affidavit in open court in order that petitioner may contest its sufficiency. Cf. United States v. Roth, 391 F.2d 507 (7th Cir. 1967). This will accord with the traditional preference for adversary proceed-

---

1. Although petitioner also relies on the Fifth and Sixth Amendments, comparable arguments were rejected in In re Dionisio, 442 F.2d 276, 278 (7th Cir. 1971).

2. See also United States v. Bailey, 327 F.Supp. 802 (N.D.Ill.1971).

3. Since a warrant was not involved, this seizure is to be tested by reasonableness rather than by probable cause. In re Dionisio, *supra* at 280.

ings as the superior means for attaining justice under our system of criminal justice. Alderman v. United States, 394 U.S. 165, 183, 89 S.Ct. 961, 22 L.Ed.2d 176; Dennis v. United States, 384 U.S. 855, 873–875, 86 S.Ct. 1840, 16 L.Ed.2d 973. As the Supreme Court has stated in a related context, "[a]dversary proceedings * * * will substantially reduce [the] incidence [of error] by guarding against·the possibility that the trial judge, through lack of time or unfamiliarity with the information contained in and suggested by the [in camera] materials, will be unable to provide the scrutiny which the Fourth Amendment exclusionary rule demands." Alderman v. United States, supra, 394 U.S. at 184, 89 S.Ct. at 972; see also Dennis v. United States, supra, 384 U.S. at 874–875, 86 S.Ct. 1840.

■ It is true, of course, that arrest or search warrants normally issue from an ex parte proceeding in which a "neutral and detached" magistrate is the only initial buffer between government and citizen. Aguilar v. Texas, 378 U.S. 108, 110–111, 84 S.Ct. 1509, 12 L.Ed.2d 723; Johnson v. United States, 333 U.S. 10, 13–14, 68 S.Ct. 367, 92 L.Ed. 436. But that procedure provides no analogy for the proper constitutional requisite in the present context. The term "reasonable" as used in the Fourth Amendment, like "due process" in the Fifth, demands a measure of constitutional sufficiency which varies with the situation presented. In the warrant situation, difficulties of locating a suspect or possessor of evidence, the problems of apprehension, the destructibility of evidence, the need for promptness to protect the public against violence and to prevent repetition of criminal conduct necessitate the ex parte nature of the warrant issuance proceeding. However, none of these considerations ordinarily underlies a petition to force compliance with a grand jury request for exemplars. Apart from the argument based on the need for secrecy of grand jury proceedings (discussed infra), the United States has failed to show how disclosure of its affidavit in an adversary hearing would sig-nificantly impair the administration of criminal justice. On the contrary, there is a "growing realization that disclosure, rather than suppression, of relevant materials ordinarily promotes the proper administration of criminal justice." Dennis v. United States, supra, 384 U.S. at 870, 86 S.Ct. at 1849; see also United States v. Amabile, 395 F.2d 47, 53 (7th Cir. 1968), certiorari denied, 401 U.S. 924, 91 S.Ct. 869, 27 L.Ed.2d 828.

More important, unlike the warrant situation where the accused will have an opportunity to contest the sufficiency of the warrant on a motion to suppress before he may be tried and imprisoned (Federal Rules of Criminal Procedure 41(e); Giordenello v. United States, 357 U.S. 480, 484, 78 S.Ct. 1245, 2 L.Ed.2d 1503), here failure to allow the witness effectively to oppose the Government's petition has resulted in an indefinite incarceration for an unchallengeable reason. We cannot condone such manifest unfairness.

The Government argues that the hearing on its petition to enforce the grand jury's direction must be ex parte rather than adversary in nature in order to protect the secrecy of grand jury proceedings. By now it should be apparent that "grand jury secrecy" is no magical incantation making everything connected with the grand jury's investigation somehow untouchable. Dennis v. United States, supra, 384 U.S. at 868–873, 86 S.Ct. 1840; United States v. Amabile, supra, 395 F.2d at 53. However, even according the secrecy privilege the broadest justifiable scope, disclosure of the present affidavit would not trench upon its boundaries.

■■ We have examined the affidavit and find that ·it does not recount proceedings before the grand jury. Rather, it states the results the Government derived from its own investigation and then presented to the grand jury. Thus disclosure here cannot be said to discourage the grand jurors from engaging in uninhibited investigation, full discussion, and conscientious voting. Since he is re-

questing the disclosure, certainly Mara could not be heard to object that the affidavit might reveal disparaging information about him. Moreover, he has been advised that he is a potential defendant so that the Government cannot convincingly contend that divulging the material in the affidavit would precipitate his flight from prosecution. In any case, the Government is well aware of the means at its disposal to prevent escape.[4] Finally, the affidavit does not appear to contain information elicited from complainants and witnesses before the grand jury. Where anonymity is necessary to prevent intimidation or preserve sources of information, deletion of the witnesses' identity may be permitted under the proper standards of trustworthiness and reliability. See Jones v. United States, 362 U.S. 257, 271–272, 80 S.Ct. 725, 4 L.Ed.2d 697; Rugendorf v. United States, 376 U.S. 528, 533, 84 S.Ct. 825, 11 L.Ed. 2d 887; Aguilar v. Texas, supra, 378 U.S. at 114, 84 S.Ct. 1509; Spinelli v. United States, 393 U.S. 410, 415–419, 89 S.Ct. 584, 21 L.Ed.2d 637; United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723.

■ Disclosure of the affidavit in open court is particularly appropriate where, as here, the information contained therein is the fruit of the Government's own investigatory activity and does not bear the imprint of the grand jury's independent initiative. Such disclosure should serve to curtail any attempt to circumvent the requirements of the Fourth Amendment by interposing the grand jury between it and the citizen under investigation. In re Dionisio, supra,

442 F.2d at 280–281; United States v. Bailey, supra, 327 F.Supp. at 803. We conclude that to afford due process under the Fifth Amendment, disclosure of information not clearly under the veil of grand jury secrecy is needed to protect citizens from infringement of their Fourth Amendment rights through abuse of the grand jury process.

■ The Government sometimes may be unable to carry its burden of showing reasonableness in open court without jeopardizing the values that grand jury secrecy is meant to protect. In such rare instances, the Government may properly approach the court to preserve the confidentiality of those portions of the affidavit which ought not be exposed. We are confident that in deciding what matters may be withheld, the district court will be guided not by a blind obeisance to grand jury secrecy but solely by the purposes which are truly served by this privilege. Dennis v. United States, supra, 384 U.S. at 872, note 18, 86 S.Ct. 1840; see Federal Rules of Criminal Procedure 6(e).

■ The substantive showing that the Government must make to justify the order it seeks is that the grand jury's direction to furnish exemplars is "reasonable." In re Dionisio, supra, 442 F.2d at 280–281. Reasonableness in this context is not necessarily synonymous with probable cause.[5] Like the reasonableness requirement applied to a grand jury subpoena to produce documentary evidence, a reasonable direction to furnish exemplars requires that the Government's affidavit show that the grand jury investigation was properly authorized, for a

4. If the Government has probable cause to believe that disclosure of its affidavit in an adversary proceeding will precipitate the disappearance of the witness, it may procure a material witness arrest warrant. See Bacon v. People of State of California, 438 F.2d 637 (9th Cir. 1971).

5. Although the Supreme Court remarked that it "has insisted upon probable cause as a minimum requirement for a reasonable search permitted by the Constitution," Chambers v. Maroney, 399 U.S.

42, 51, 90 S.Ct. 1975, 26 L.Ed.2d 419, the reference was to an actual non-consensual intrusion into protected privacy and not to a request to furnish physical characteristics for identification purposes under pain of contempt. The reasonableness requirement means something less than probable cause if the intrusion is limited. See Terry v. Ohio, 392 U.S. 1, 24–27, 88 S.Ct. 1868, 20 L.Ed.2d 889. Moreover, the aegis of the grand jury was not involved in Chambers.

purpose Congress can order, that the information sought is relevant to the inquiry, and that the grand jury's request for exemplars is "adequate, but not excessive, for the purposes of the relevant inquiry." Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 209, 66 S. Ct. 494, 506, 90 L.Ed. 614. Because a request for exemplars is distinguishable from a subpoena duces tecum—indeed it is a unique phenomenon—we interpret "adequate, but not excessive" to mean that the Government must affirmatively show that the grand jury process is not being abused.

As the Court indicated in *Dionisio*, it would be an abuse of the grand jury process for the Government to conduct a general fishing expedition under grand jury sponsorship with the mere explanation that the witnesses are potential defendants. 442 F.2d at 281. Consequently, in order to insure that there is a sufficiently explicit connection between the identification evidence sought and the purpose to be served, the Government must submit a somewhat more detailed affidavit than the one previously supplied to the district court. However, this does not mean that there must always be probable cause to believe such evidence will disclose an offense or that the witness committed it.

In addition, we hold it to be an abuse of the grand jury process for the Government to impose on that body to perform investigative work that can be, and heretofore has been, successfully accomplished by the regular investigative agencies of Government. Therefore, the Government's affidavit must also show why satisfactory handwriting and printing exemplars cannot be obtained from other sources without grand jury compulsion.

In accordance with a suggestion in the Government's brief in the *Dionisio* case, *supra*, if the Government makes an adequate showing of reasonableness for the compulsion of these exemplars, they should be furnished in the grand jury room as part of its process if petitioner prefers that course in lieu of furnishing them to the FBI in the presence of his counsel (in accordance with the option extended him by the Government). See In re Dionisio, *supra*, 442 F.2d at 279, note 1.

Without an open and sufficiently stringent test of reasonableness to support the order compelling the furnishing of the exemplars, petitioner's incarceration was unjustified. Therefore, the contempt judgment is reversed, and the cause is remanded for further proceedings consistent herewith. Our mandate will issue forthwith.